U.S. Court of Appeals No. 15-16657
U.S.D.C. Case No. 15-cv-01158-HSG

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RITAROSE CAPILI, an individual,

*Plaintiff-Appellee,*

vs.

THE FINISH LINE, INC.,

*Defendant-Appellant.*

CIGNA HEALTH CORPORATION; LIFE INSURANCE COMPANY OF
NORTH AMERICA,

*Defendants.*

## OPENING BRIEF FOR DEFENDANT-APPELLANT

THOMAS M. McINERNEY, State Bar No. 162055
tmm@ogletreedeakins.com
BROOKE S. PURCELL, State Bar No. 260058
brooke.purcell@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Market Plaza
Steuart Tower, Suite 1300
San Francisco, CA 94105
Telephone: 415.442.4810 / Facsimile: 415.442.4870

**Attorneys for Defendant-Appellant**
**THE FINISH LINE, INC.**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellant The Finish Line, Inc. ("Finish Line") is a publicly traded corporation. Royce & Associates, LLC owns over ten percent of stock in Finish Line. No other publicly held corporation owns ten percent or more of Finish Line's stock.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................1

II.    JURISDICTIONAL STATEMENT ..............................................3

III.   QUESTIONS PRESENTED ........................................................4

IV.    STATEMENT OF THE CASE .....................................................5

V.     STATEMENT OF FACTS ..........................................................6

       A.     Finish Line Operations. ..................................................6

       B.     Plaintiff Applied To Work For Finish Line And Entered Into
              Three Separate Arbitration Agreements With The Company..............6

       C.     Capili's Arbitration Agreement With Finish Line. ..............7

       D.     Capili's Underlying Claims Are Covered By The Arbitration
              Agreement. ..................................................................8

       E.     Plaintiff Ignored Her Arbitration Agreement And Filed This
              Action. ......................................................................8

       F.     The District Court's Decision. ........................................9

VI.    SUMMARY OF ARGUMENT...................................................12

VII.   STANDARD OF REVIEW........................................................15

VIII.  ARGUMENT...........................................................................16

       A.     Federal Law And Policy Favor Arbitration: ......................16

              1.     The FAA Embodies The Longstanding Federal Policy
                     Favoring Arbitration. ..........................................16

              2.     The FAA Broadly Preempts State-Law Rules That
                     Disfavor Or Treat Agreements To Arbitrate Differently
                     From Other Contracts. .........................................18

       B.     California Law Applied By The District Court Improperly
              Discriminates Against Arbitration Agreements...................22

i

1. California Contract Law Requires That Courts Sever Unconscionable Provisions And Enforce The Remaining Agreement. ...............................................................22

2. California's Severability Rule In Arbitration Agreements Differs From General Contract Law And Improperly Prevents Severability Of More Than One Unconscionable Provision. ........................................26

3. California's Severability Rule for Arbitration Agreements Is Preempted By The FAA. ..................29

    a. *Armendariz* Demonstrates California Courts' Animus Towards Arbitration As An Alternate Forum. ...................................................................29

    b. The FAA Preempts Application Of The *Armendariz* Severability Rule. ........................31

4. The District Court Abused Its Discretion By Refusing To Sever The Three Purportedly Unconscionable Provisions Of The Arbitration Agreement .................................32

C. The Arbitration Agreement Is Not Unconscionable And Should Be Enforced. ..........................................................35

1. The Arbitration Agreement Is Not Procedurally Unconscionable. ....................................................36

2. The Arbitration Agreement Is Not Substantively Unconscionable. ....................................................39

    a. The Exemption Of Certain Claims From Arbitration Is Not Unconscionable ................40

    b. The Cost Sharing Provision Is Not Unconscionable .................................................43

    c. The Forum Selection Clause Is Not Unconscionable .................................................48

IX. CONCLUSION ...........................................................51

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)....................................................................17, 19

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013)...................................................................18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).................................................................*passim*

*Baumann v. Finish Line, Inc.*,
    421 Fed. App'x. 632 (7th Cir. 2011) ...............................................45

*Bradley v. Harris Research, Inc.*,
    275 F.3d 884 (9th Cir. 2001) ..........................................................36

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) ..........................................................41

*Bushley v. Credit Suisse First Boston*,
    360 F.3d 1149 (9th Cir. 2004) ........................................................15

*Captain Bounce, Inc. v. Business Fin. Servs.*,
    No. 11-CV-858 JLS (WMC), 2012 WL 928412
    (S.D. Cal. March 19, 2012)..............................................................49

*Carlile v. Russ Berrie & Co.*, No. SACV 08-0887 AG (RNBx),
    2008 WL 4534281, at *3 (C.D. Cal. Oct. 6, 2008)............................37

*Circuit City Stores, Inc. v. Adams*,
    279 F.3d 889 (9th Cir. 2002) ..........................................................46

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)........................................................................17

*Direct TV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015)......................................................................18

*Doctor's Associates, Inc. v. Casarotto*,
   517 U.S. 681 (1996) .................................................................................*passim*

*Ferguson v. Countrywide Credit Indus., Inc.*,
   298 F.3d 778 (9th Cir. 2002) ...............................................................41

*Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship.*,
   106 F.3d 1465 (9th Cir. 1997) ..............................................................15

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)...............................................................................22

*Fouts v. Milgard Mfg., Inc.*,
   No. C11-06269 HRL, 2012 WL 1438817 (N.D. Cal. Apr. 25, 2012)...............36

*Galen, et al. v. Redfin Corp.*,
   2015 WL 7734137 (N.D. Cal. Dec. 1, 2015)................................32, 33

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000)................................................................................44

*Hadlock v. Norwegian Cruise Line, Ltd.*, No. SACV 10-0187 AG
   (ANx), 2010 WL 1641275, at * 5-6 (C.D. Cal. April 19, 2010) .......................49

*Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008).............................................................................16

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
   379 F.3d 159 (5th Cir. 2004) ...............................................................20

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) ..............................................................46

*Jackson v. Rent-A-Center West, Inc.*,
   581 F.3d 912 (9th Cir. 2009) ...............................................................44

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) ...............................................................15

*Merkin v. Vonage America, Inc.*,
   2014 WL 457942 (C.D. Cal. Feb. 3, 2014) .........................................42

*Merkin v. Vonage America, Inc.*,
  2016 WL 775620 (9th Cir. 2016) ............................................................*passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)...................................................................................41

*Molina v. Scandinavian Designs, Inc.*,
  No. 13-cv-04256 NC, 2014 WL 1615177 (N.D. Cal. Apr. 21,
  2014) ..........................................................................................................37

*Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).......................................................................................17

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ..............................................................41, 49

*Perry v. Thomas*,
  482 U.S. 483 (1987)...................................................................18, 19, 31, 32

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) .....................................................................46

*Preston v. Ferrer*,
  552 U.S. 346 (2008)...........................................................................18, 19, 20

*Prima Paint Corp. v. Flood & Conklin Mfg. Co*,
  388 U.S. 395 (1967)...............................................................................19, 20

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010).....................................................................................16

*Saincome v. Truly Nolen of Am., Inc.*,
  No. 11-CV-825-JM (BGS), 2011 WL 3420604 (S.D. Cal. Aug. 3, 2011).........38

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)...................................................................................16, 17

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*,
  559 U.S. 662 (2010)...................................................................................33

*Ting v. AT&T*,
  319 F.3d 1126 (9th Cir. 2003) ...................................................................46

*Zaborowski v. MHN Gov's. Servs., Inc.*,
  601 F. App'x 461 (9th Cir. 2014) ........................................................32

**STATE CASES**

*24 Hour Fitness, Inc. v. Superior Court*,
  66 Cal. App. 4th 1199 (1998) ........................................................45, 46

*A&M Produce Co. v. FMC Corp.*,
  135 Cal. App. 3d 473 (1982) ........................................................24

*American Software, Inc., v. Ali*,
  46 Cal. App. 4th 1386 (1996) ........................................................35, 39

*Armendariz v. Found. Health Psychare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ........................................................*passim*

*Birbrower, Montalbano, Condon & Frank v. Superior Court*,
  17 Cal. 4th 119 (1998) ........................................................24

*California Sch. Employees Ass'n. v. Del Norte County Unified Sch.
  Dist.*, 2 Cal. App. 4th 1396 (1992) ........................................................25, 26

*Carboni v. Arrospide*,
  2 Cal. App. 4th 76 (1991) ........................................................25

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
  226 Cal. App. 4th 74 (2014) ........................................................28

*Crippen v. Central Valley RV Outlet*,
  124 Cal. App. 4th 1159 (2004) ........................................................14

*Dotson v. Amgen, Inc.*,
  181 Cal. App. 4th 975 (2010) ........................................................13, 22, 38

*Fair v. Bakhtiari*,
  195 Cal. App. 4th 1135 (2011) ........................................................25

*Fitz v. NCR Corp.*,
  118 Cal. App. 4th 702 (2004) ........................................................13, 26

*Green v. Ralee Engineering Co.*,
  19 Cal. 4th 66 (1998) ........................................................47

*Iskanian v. CLS Transp. Los Angeles, LLC*,
   49 Cal. 4th 348 (2014) ...................................................................27

*Jones v. Humanscale Corp.*,
   130 Cal. App. 4th 401 (2005) ..........................................................23

*Keene v. Harling*,
   61 Cal. 2d 318 (1964) ......................................................................24

*Lhotka v. Geographic Expeditions, Inc.*,
   181 Cal. App. 4th 816 (2010) ..........................................................28

*Lu v. Dryclean-U.S.A. of Cal., Inc.*,
   11 Cal. App. 4th 1490 (1992) ..........................................................48

*Mailand v. Burckle*,
   20 Cal. 3d 367 (1978) ......................................................................24

*Malone v. Superior Court*,
   226 Cal. App. 4th 1551 (2014) ..................................................28, 29

*Marathon Entm't., Inc. v. Blasi*,
   42 Cal. 4th 974 (2008) ........................................................23, 24, 35

*In re Marriage of Facter*,
   212 Cal. App. 4th 967 (2013) ..........................................................25

*Martinez v. Master Prot. Corp.*,
   118 Cal. App. 4th 107 (2004) ....................................................28, 40

*Mercuro v. Superior Court*,
   96 Cal. App. 4th 167 (2002) ..............................................40, 41, 42

*Morris v. Redwood Empire Bancorp*,
   128 Cal. App. 4th 1305 (2005) ......................................13, 14, 39, 43

*Murphy v. Check 'N Go of Cal., Inc.*,
   156 Cal. App. 4th 138 (20007) .........................................................27

*Ontiveros v. DHL Exp. (USA), Inc.*,
   164 Cal. App. 4th 494 (2008) ..........................................................28

*Pearson Dental Supplies, Inc. v. Superior Court*,
  48 Cal. 4th 665 (2010) ...................................................................45

*Pinedo v. Premium Tobacco Stores*,
  85 Cal. App. 4th 774 ( 2000) .........................................................28

*Pinela v. Neiman Marcus Group, Inc.*,
  238 Cal. App. 4th 227 (2015) ........................................................28

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ..............................................................35, 36

*Shadoan v. World Sav. & Loan Ass'n.*,
  219 Cal. App. 3d 97 (1990) ...........................................................36

*Shopoff & Cavallo LLP v. Hyon*,
  167 Cal. App. 4th 1489 (2008) .................................................22, 23

*Smith, Valentino & Smith, Inc. v. Superior Court*,
  17 Cal. 3d 491 (1976) ...................................................................49

*Trivedi v. Curexo Tech. Corp.*,
  189 Cal. App. 4th 387 (2010) ........................................................27

*Turner v. Superior Court*,
  67 Cal. App. 4th 1432 (1998) ........................................................46

*Wayne v. Staples, Inc.*,
  135 Cal. App. 4th 466 (2006) ..................................................13, 36

*Wherry v. Award, Inc.*,
  192 Cal. App. 4th 1242 (2011) ......................................................28

## Federal Statutes

9 U.S.C. § 2 ................................................................................*passim*

9 U.S.C. § 16(a)(1)(B) ......................................................................3

28 U.S.C. § 1332................................................................................3, 5

28 U.S.C. § 1441................................................................................3, 5

28 U.S.C. § 1446................................................................................3, 5

**State Statutes**

Cal. Civ. Code § 1598 .............................................................................22

Cal. Civ. Code § 1599 .....................................................................13, 22

Cal. Civ. Code § 1670.5 ...................................................................13, 23

Cal. Civ. Code § 1670.5(a) ..............................................................15, 43

Cal. Code Civ. Proc. § 1284.2 .........................................................46, 47

**OTHER AUTHORITIES**

U.S. Const., Article VI, cl. 2 ...................................................................18

# I.     INTRODUCTION.

The central issue of this case is whether, under the Federal Arbitration Act ("FAA"), courts should place arbitration agreements between parties on an equal footing with other contracts or instead accept judicially-created rules demonstrating hostility towards arbitration agreements in order to prevent the enforcement of such agreements.

Ritarose Capili ("Capili"), the plaintiff-appellee, signed not one but three separate arbitration agreements with defendant-appellant The Finish Line, Inc. ("Finish Line").  Despite those agreements, Capili brought the underlying action in California Superior Court rather than submit her employment claims to arbitration. Finish Line repeatedly requested that Capili comply with her multiple agreements and stipulate to arbitration.  In those requests, Finish Line agreed to waive both a forum selection clause (by agreeing to hold the arbitration in San Francisco) and a cost sharing provision (by having Finish Line pay all the arbitration costs).  Capili steadfastly refused to agree to arbitrate, forcing Finish Line to remove the action to federal court and move to compel arbitration.

In deciding Finish Line's motion to compel arbitration, the District Court found that three provisions of the arbitration agreement were substantively unconscionable.  However, a recent ruling by this Court reflects that the District Court clearly erred in finding one of the three provisions unconscionable, a

1

provision carving-out certain claims from arbitration. Finish Line (without any prompting and prior to the filing of this action) previously agreed to waive the remaining two offending provisions. At oral argument and in its pleadings, Finish Line repeatedly suggested that the District Court strike any offensive provisions – pursuant to the parties' express severability clause – and enforce the remainder of the agreement.

Despite the agreement between the parties and the substantial federal and state law favoring enforcement of contracts generally, and the overwhelming federal law favoring enforcement of arbitration agreements in particular, the District Court relied on judicially created California state rules which discriminate against arbitration agreements and refused to sever the offending provisions from the agreement. Thereafter, the District Court refused to enforce the remainder of the agreement and denied Finish Line's Motion.

The District Court's order should be reversed.

## II.    <u>JURISDICTIONAL STATEMENT.</u>

The District Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  Therefore, the District Court had jurisdiction to decide Finish Line's motion to compel arbitration.

On July 22, 2015, the District Court denied Finish Line's motion.  Excerpts of Record ("ER") 15-25.  Finish Line filed a timely notice of appeal on August 19, 2015.  ER 27-40.  Pursuant to 9 U.S.C. § 16(a)(1)(B), this Court has jurisdiction to review the District Court's denial of Finish Line's motion to compel.

### III.   QUESTIONS PRESENTED.

1.      Did the District Court abuse its discretion by applying California's discriminatory rules concerning arbitration agreements, which the U.S. Supreme Court prohibited in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ("*Concepcion*"), in declining to sever three provisions of the parties' arbitration agreement, which it found unconscionable and refusing to enforce the remainder of the agreement?

2.      Did the District Court err in its finding that the parties' arbitration agreement is procedurally unconscionable based upon the conclusion that it was a contract of adhesion?

3.      Did the District Court err by relying upon and misapplying California rules that discriminate against arbitration, which were struck down in *Concepcion*, in finding that the parties' arbitration agreement was substantively unconscionable?

## IV.  STATEMENT OF THE CASE.

Plaintiff Capili filed a wrongful termination and discrimination action against her former employer, Finish Line, an athletic shoe and apparel retailer which operates approximately 660 stores in 47 states throughout the United States, on January 15, 2015.  ER 186-203.  She then filed her First Amended Complaint ("FAC") on February 6, 2015, alleging numerous claims under the California Fair Employment and Housing Act ("FEHA") including, discrimination based on disability, discrimination based on sex, failure to engage in the interactive process, failure to provide notice, failure to accommodate, failure to provide leave, interference, failure to prevent discrimination, retaliation, and wrongful discrimination and termination based on disability in violation of public policy.  ER 205-223.  On March 10, 2015, Finish Line filed an Answer to Capili's FAC in California Superior Court and the following day removed the action to the Northern District of California based on diversity jurisdiction under 28 U.S.C. §§ 1332, 1441 and 1446.  ER 179-228.

On May 15, 2015, Finish Line moved to compel Capili to arbitrate her claims.  ER 69-178.  After Finish Line's motion to compel arbitration became fully briefed, the court held a hearing on the motion on July 9, 2015.  ER 1-14.  On July 22, 2015, the court issued an order denying the motion.  ER 15-25.  Finish Line filed its notice of appeal on August 19, 2015.  ER 27-40.

5

## V.   **STATEMENT OF FACTS.**

### A.   **Finish Line Operations.**

Finish Line's stores include both stand-alone operations and "stores" enclosed within Macy's department stores.  The company contracts with co-defendant Life Insurance Company of North America ("LINA"), operating under the name Cigna, to provide administrative services in support of Finish Line's employee leave policies.  The application of those policies to Capili is at issue in the underlying action.  ER 205-223.

### B.   **Plaintiff Applied To Work For Finish Line And Entered Into Three Separate Arbitration Agreements With The Company.**

On June 21, 2010, Capili applied to work as a Sales Associate at a stand-alone Finish Line store at the Serramonte Center in Daly City, California.  ER 75, 90, 95-96.  Her application included an arbitration agreement that provided:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment and/or cessation of employment with The Finish Line, Inc., exclusively by final and binding arbitration before a neutral arbitrator.  By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age discrimination and Employment Act, title VII of the Civil Rights Act of 1964, . . . the Americans with Disabilities Act, the law of contract and the law of tort.

ER 75-76, 90, 95-96.  Finish Line hired Capili as a Sales Associate and less than two years later, on or around March 22, 2012, Capili voluntarily resigned from her position.  ER 76, 90.

6

On August 13, 2013, over a year after her resignation, Capili applied for another position with the company, at Finish Line's store located within Macy's department store in Daly City, California. ER 76, 90, 98-103. Capili's 2013 application included an arbitration agreement which was virtually identical to her 2010 application. *Id*. As part of Capili's onboarding paperwork, Capili reviewed and signed a third, more lengthy, stand-alone arbitration agreement on August 26, 2013, "The Finish Line, Inc. Employee Dispute Resolution Plan" (the "Arbitration Agreement"). ER 77-78, 91-92, 109-113. On August 28, Finish Line re-hired Capili as a Sales Lead. ER 106. This appeal relates to the Arbitration Agreement.

## C.  <u>Capili's Arbitration Agreement With Finish Line.</u>

The Arbitration Agreement states that it "is intended to create an *exclusive mechanism* for the final resolution of all disputes falling within its terms." ER 78, 92, 109, (emphasis added). In entering into the agreement, the parties agreed that "[p]roceeding under the plan shall be the exclusive, final and binding method by which disputes are resolved." *Id*. With respect to scope, the Arbitration Agreement states that it applies to:

> any past, present, or future legal or equitable claim, demand, or controversy, whether or not arising out of the employment relationship, between persons bound by the Plan. The claims covered by this Plan include, but are not limited to, claims relating to the employment of Employee; claims relating to this Plan; claims for wages or other compensation due; … tort claims, claims for

discrimination … ; and claims for violation of any federal, state, or other governmental law, statue regulation or ordinance….

ER 78, 110.  The Arbitration Agreement also included an explicit severability clause which states:

> **Severability**. [¶] The terms of this Plan are severable.  The invalidity or unenforceability of any provision herein shall not affect the application of any other provisions.

ER 49, 112.

## D.     Capili's Underlying Claims Are Covered By The Arbitration Agreement.

As outlined above, Capili's FAC alleges various causes of action, each of which arises from or relate to her employment with Finish Line.  ER 205-223.  Those claims include "claims for discrimination" and "claims for violation of … state … law" as envisioned by the Arbitration Agreement.  ER 78, 92, 109-110, 205-223.  Each of Capili's claims in the FAC is covered by the Arbitration Agreement.  *Id.*

## E.     Plaintiff Ignored Her Arbitration Agreement And Filed This Action.

Despite her multiple agreements to arbitrate all employment disputes with Finish Line, Capili filed this lawsuit against Finish Line alleging various violations of the FEHA, all of which were clearly covered by the Arbitration Agreement.  ER 109-113; 205-223.  After learning of the lawsuit, Finish Line sought an agreement from Capili to arbitrate the matter.  ER 79, 167, 170-176.  In doing so, Finish Line

8

offered to waive two provisions of the agreement, the cost sharing provision and a venue provision.[1]  ER 53, 79, 85-86, 167, 170-176.  To that end, Finish Line repeatedly agreed to pay for all arbitration fees and agreed to arbitrate the matter in San Francisco, California.  *Id*.

When Capili refused to agree to arbitration pursuant to the parties' Arbitration Agreement, despite Finish Line's agreement concerning arbitration fees and venue, Finish Line filed an Answer to the FAC, removed the action to federal court and moved to compel arbitration consistent with the Arbitration Agreement. ER 69-88, 179-184, 225-228.  Capili opposed that motion.  ER 60-68.  Capili's opposition argued that the arbitration agreement was both procedurally and substantively unconscionable and should not be enforced under California law.  *Id*.

## F.  <u>The District Court's Decision.</u>

After briefing by the parties, the District Court held a hearing on Finish Line's motion to compel arbitration.  ER 1-14.  Ultimately, the District Court agreed with Capili that the Arbitration Agreement was procedurally and substantively unconscionable.  ER 15-25.

---

[1] The venue provision requires that any arbitration under the agreement take place in Indianapolis, Indiana and that an arbitrator shall be drawn from AAA's Cincinnati, Ohio panel for employment disputes.  The cost sharing provision states that costs shall be shared among the parties equally, but that an employee's share cannot exceed the greater of $10,000 or 10% of the amount in controversy and that the arbitrator has authority to "reduce the Employee's share of the costs upon a showing of substantial need."  ER 110-112.

The District Court found that the "circumstances of the parties' agreement demonstrates at least some level of procedural unconscionability," largely due to the fact that the Arbitration Agreement was a condition of Capili's employment. ER 19. However, the court noted, "the fact that Finish Line's automated process [by which Capili signed the Arbitration Agreement,] specifically called out the Arbitration Agreement reduces the level of unfairness." *Id.* The District Court then concluded that three individual terms of the Arbitration Agreement were substantively unconscionable: (1) the forum selection clause, (2) a clause exempting certain claims from arbitration, and (3) the cost sharing provision. ER 20-23.

With respect to forum, the Arbitration Agreement provides that "[t]he Arbitration shall take place in Indianapolis, Indiana" and that "[a]ny challenge to the enforceability of this Plan or an arbitrator's award shall be filed in federal court in the Southern District of Indiana, Indianapolis Division, or in a state court situated in Marion County, Indiana." ER 109, 111.

The clause exempting certain claims from arbitration states:

> Notwithstanding anything to the contrary in this Plan, the Plan does not apply to (i) Employees' claims for workers' compensation benefits or unemployment compensation benefits or (ii) claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. Further, nothing herein is intended or will operate to affect the exclusive remedies provided under the applicable workers' compensation statute.

10

ER 110.

The cost sharing provision states:

The parties shall equally share the cost of any filing fee and the fees and costs of the Arbitrator; provided, however, that the Employee's maximum contribution shall be the greater of (i) $10,000.00 or (ii) 10% of the amount in controversy. The Arbitrator has the authority upon motion to further reduce the Employee's share of the costs and fees upon a showing of substantial need.

ER 112.

Although Finish Line repeatedly offered to waive the venue and cost sharing provisions in its initial informal conversations with Capili, and despite Finish Line's invitation to the District Court to exercise its authority to sever all three offending provisions in accordance with the severability clause agreed upon by the parties, the court refused to sever the three provisions and enforce the remainder of the agreement. ER 24-25, 48-49, 112, 167, 170-171. Rather, the court found that *three*[2] objectionable provisions (two of which had already been waived by Finish Line) were "simply too numerous and too important to be severed from the whole." ER 5-9, 23, 48-49, 167, 170-171. Based on that determination, the District Court concluded "that the Arbitration Agreement is so ' "permeated" by unconscionability [it] could only be saved, if at all, by a reformation beyond [the

---

[2] Although the Court found three unconscionable provisions, its finding concerning the clause excluding certain claims from arbitration was clearly erroneous as demonstrated by recent Ninth Circuit authority. *Merkin v. Vonage America, Inc.*, 2016 WL 775620, at *1 (9th Cir. 2016); *see* Section VII(C)(2)(a), *infra*.

Court's] authority.' " ER 24. Further, the District Court found that Finish Line's "willingness to waive the unconscionable provisions in its Arbitration Agreement does not cure these problems." *Id*. Based on that reasoning, the District Court denied Finish Line's motion in its entirety. ER 24-25.

## VI.    SUMMARY OF ARGUMENT.

The District Court's decision to deny Finish Line's motion to compel arbitration based on judicially created California law that disfavors arbitration and treats arbitration agreements differently from other contracts is contrary to the U.S. Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ("*Concepcion*"). In that case, the Supreme Court forcefully confirmed that under the FAA, agreements to arbitrate must be enforced in accordance with the agreement of the parties and in a manner that *favors* arbitration. *Id.* The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id.*, at 339 (internal quotations and citations omitted).

*Concepcion* makes clear that the FAA preempts state law rules that: "rely on the uniqueness of an agreement to arbitrate," "would have a disproportionate impact on arbitration agreements," or "stand as an obstacle to the accomplishment of the FAA's objectives" and "interfere[] with fundamental attributes of arbitration and thus create[] a scheme inconsistent with the FAA." *Id.*, at 341-344.

In California, the legislature and the courts have long expressed a policy in favor of enforcing contracts and severing any unlawful provisions in favor of enforcing agreements among parties. Cal. Civ. Code § 1599; *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 986 (2010). Yet, under the judicially created law of *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83 (2000) ("*Armendariz*"), and its progeny, California courts treat agreements to arbitrate differently from other contracts. Under a rule first outlined in *Armendariz*, "more than one unlawful provision in an arbitration agreement weighs against severance." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004). However, based on the Supreme Court's holding in *Concepcion,* such a rule is preempted by the FAA because it both stands as an obstacle to and interferes with the fundamental attributes of arbitration.

Under general California contract law, a "court may refuse to enforce [a] contract [term]" that the court "finds . . . to have been unconscionable at the time [the contract] was made." Cal. Civ. Code § 1670.5; *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1316 (2005). "Unconscionability has both procedural and substantive elements. Both must appear for a court to invalidate a contract or . . . term[] …." *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (2006). The analysis between procedural and substantive elements of contract operates on a "sliding scale." *Morris*, 128 Cal. App. 4th at 1317. In order for a

court to deny enforcement of a contract, a term that is minimally procedurally unconscionable must be significantly substantively unconscionable. *Id.* The party seeking to avoid arbitration has the "burden . . . to prove both procedural and substantive unconscionability." *Crippen v. Central Valley RV Outlet*, 124 Cal. App. 4th 1159, 1165 (2004).

Here, Capili had the burden of proving that the Arbitration Agreement at issue was both procedurally and substantively unconscionable. Capili failed to meet that burden. After finding three purportedly substantively unconscionable provisions of the Arbitration Agreement, one of which was a clear error, the District Court, relying on *Armendariz*, refused to enforce the parties' Arbitration Agreement. Contrary to the clear instruction of *Concepcion*, the District Court erred by denying Finish Line's motion through improper application of rules that discriminate against arbitration agreements and which treat agreements to arbitrate differently from all other contracts.

# VII. <u>STANDARD OF REVIEW.</u>

This court has the authority to review the District Court decision denying Finish Line's motion to compel arbitration *de novo.  Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).  The Court also has the authority to review contractual interpretations *de novo*.  *Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship.*, 106 F.3d 1465, 1471 (9th Cir. 1997).  The District Court's severance analysis is reviewed for abuse of discretion.  *See* Cal. Civ. Code § 1670.5(a).  A court abuses its discretion when (among other things) it fails to "appl[y] the correct legal rule."  *Leyva v. Medline Indus.*, 716 F.3d 510, 513 (9th Cir. 2013).

# VIII. **ARGUMENT.**

## A. **Federal Law And Policy Favor Arbitration.**

### 1. **The FAA Embodies The Longstanding Federal Policy Favoring Arbitration.**

The FAA instructs:

> A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. § 2 ("§ 2").

As the Supreme Court observed "[t]he FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *Concepcion*, 563 U.S. at 339, citing to *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). "[T]he purpose of the act was to assure those who desired arbitration . . . that their expectations would not be undermined by federal judges, or . . . by state courts or legislatures." *Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984), *quoting Metro Indus. Painting Corp. v. Terminal Constr. Corp.*, 287 F.2d 382, 387 (2nd Cir. 1961). The FAA embodies "both a 'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract.' " *Concepcion*, at 339, *quoting from Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("*Moses H. Cone*") and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

The FAA "creat[es] a body of federal substantive law of arbitrability" that is "applicable to any arbitration agreement within the coverage of the act." *Moses H. Cone*, 460 U.S. at 24. The FAA's reach is "expansive . . . coinciding with that of the Commerce Clause." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-121 (2001). The "substantive rules" of the FAA "apply in state as well as federal courts." *Southland Corp.*, 465 U.S. at 11. In enacting the FAA, Congress "contemplated a broad reach of the Act, ***unencumbered by state law constraints***." *Id.*, at 13 (emphasis added).

"The 'principle purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " *Concepcion*, 563 U.S. at 344 (quoting *Volt Info. Scis. v. Board of Trs.*, 489 U.S. 468, 478 (1989)). Although "§ 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343. Rather, "Section 2 is a congressional declaration of a liberal federal policy ***favoring*** arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone*, 460 U.S. at 24 (emphasis added).

"The Federal Arbitration Act is the law of the United States and *Concepcion* is an authoritative interpretation of that act. Consequently, the judges of every

State must follow it. U.S. Const., Art. VI, cl. 2 ('[T]he Judges in every State shall be bound' by 'the Laws of the United States')." *Direct TV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015). In accordance with the FAA and overwhelming Supreme Court precedent, "courts must 'rigorously enforce' arbitration agreements." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013), *quoting Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

### 2. The FAA Broadly Preempts State-Law Rules That Disfavor Or Treat Agreements To Arbitrate Differently From Other Contracts.

The FAA preempts several categories of state laws. The FAA preempts state laws that outright prohibit arbitration. *Concepcion*, 563 U.S. at 334 ("When state law prohibits outright the arbitration of a particular type of claim, the FAA displaces the conflicting rule"); *see also Perry v. Thomas*, 482 U.S. 483, 491 (1987). The FAA also preempts state common law or statutory rules or "procedures that are incompatible with arbitration." *Concepcion*, 563 U.S. at 343-344 (striking down a California rule, based on common law, "requiring the availability of class wide arbitration," finding that it "interfere[d] with fundamental attributes of arbitration"). Finally, the FAA preempts state rules that discriminate against arbitration agreements. 9 U.S.C. § 2; *Preston v. Ferrer*, 552 U.S. 346, 356 (2008); *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("*Doctor's Associates*") ("Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon

18

the same footing as other contracts").

The FAA's antidiscrimination policy prohibits state rules that treat arbitration agreements differently from other contracts. 9 U.S.C. § 2; *Preston*, 552 U.S. at 356 (finding that the state rule at issue conflicted with the FAA, in part, because it "impos[ed] prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally"). The applicability of state laws to arbitration agreements is limited to circumstances in which the "law arose to govern issues concerning the validity, revocability, and enforceability of contracts ***generally***." *Doctor's Associates*, 517 U.S. at 687 (emphasis added), *quoting Perry*, 482 U.S. at 492, n. 9. "Courts may not, however, invalidate arbitration agreements under state laws applicable ***only*** to arbitration provisions." *Id.* at 682 (emphasis in original and further emphasis added), *citing to Allied-Bruce Terminix Companies, Inc.*, 513 U.S. at 281. "A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with" the language of § 2 [of the FAA]. *Perry*, 482 U.S. at n.9, citing to *Prima Paint Corp. v. Flood & Conklin Mfg. Co*, 388 U.S. 395, 404 (1967).

Accordingly, courts cannot, "in assessing the rights of litigants to enforce an arbitration agreement," interpret arbitration agreements "in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Id.* Further, courts cannot "rely on the uniqueness of an agreement to

19

arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot." *Id.*

For example, "when a doctrine normally thought to be generally applicable, such as . . . unconscionably" is "applied in a fashion that ***disfavors arbitration***," it too is preempted by the FAA. *Concepcion*, 563 U.S. at 341 (emphasis added). Accordingly, generally applicable state law doctrines, such as unconscionability, cannot be applied differently to arbitration agreements than all other contracts, in a manner that disfavors agreements to arbitrate. *Id.* at 341-342.

> That a state decision employs a general principle of contract law, such as unconscionability, is not always sufficient to ensure that the state-law rule is valid under the FAA. Even when using doctrines of general applicability, state courts are not permitted to employ those general doctrines in ways that subject arbitration clauses to ***special scrutiny***.

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004) (emphasis added).

Indeed, the Supreme Court has repeatedly stricken state rules imposing barriers unique to arbitration agreements or which analyze whether an arbitration agreement is enforceable based on separate rules that are applicable only to agreements to arbitrate and which are not generally applicable to all contracts. *See, e.g., Preston*, 552 U.S. at 355-56 (striking down a California statute which only allowed arbitration between artists and talent agents if the California Labor

Commissioner received notice and the ability to attend the arbitration hearing because it "impose[d] prerequisites to enforcement of an arbitration agreement that [were] not applicable to contracts generally"); *Doctor's Associates*, 517 U.S. at 683 (striking down a Montana statute that required "[n]otice that [the] contract is subject to arbitration" be "typed in underlined capital letters on the first page of the contract," holding that the requirement "which governs not 'any contract,' but specifically and solely contracts 'subject to arbitration,' conflicts with [and is preempted by] the FAA").

As the Supreme Court noted, while § 2 of the FAA allows application of generally applicable contract defenses, "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Doctor's Associates*, 517 U.S. at 687. Rather, the FAA "preclude[s] States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.' " *Id.*, quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). State law cannot condition the enforceability of agreements to arbitrate with special "requirement[s] not applicable to contracts generally." *Id.* at 687. Such a rule would place arbitration agreements "in a class apart from 'any contract.' " *Id.*, at 688. Accordingly, courts cannot apply a heightened standard or rule to agreements to arbitrate than that imposed on all contracts or otherwise discriminate against arbitration agreements.

In order to comply with the FAA, courts must apply general contract defenses *equally* between agreements to arbitrate and all other contracts.

## B. California Law Applied By The District Court Improperly Discriminates Against Arbitration Agreements.

### 1. California Contract Law Requires That Courts Sever Unconscionable Provisions And Enforce The Remaining Agreement.

While the FAA governs arbitration agreements in both federal and state court, state law generally governs the analysis of whether or not a contract to arbitrate exists between parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). It is the longstanding rule in California that "[w]here a contract has but a single object, and such object is unlawful . . . the entire contract is void." Cal. Civ. Code § 1598. It is a "fundamental" principle of contract law that "[t]he need to void contracts in violation of the law must be tempered by the countervailing public interest in preventing a contracting party from using the doctrine to create an unfair windfall." *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1523 (2008). "Where a contract has several distinct objects, of which at least one is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civ. Code § 1599; *Dotson*, 181 Cal. App. 4th at 986 ("the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement"). This rule "preserves and enforces any lawful portion of a parties' contract that feasibly may

be severed." *Shopoff*, 167 Cal. App. 4th at 1523.

The principles of contract severability are "fully applicable to the doctrine of unconscionability." *Jones v. Humanscale Corp.*, 130 Cal. App. 4th 401, 416 (2005). "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5.

Indeed, California courts routinely demonstrate a preference for severance of offending provisions, even "when the parties have contracted, in part, for something illegal." *Marathon Entm't., Inc. v. Blasi*, 42 Cal. 4th 974, 991 (2008) ("*Marathon*"). "Notwithstanding any such illegality," California courts "preserve[] and enforce[] any lawful portion of a parties' contract that feasibly may be severed." *Id.*, at 991.

California courts deciding whether to sever illegal or unconscionable provisions "look to the various purposes of the contract." *Marathon*, 42 Cal. 4th at 996. The severability analysis is "equitable and fact specific," and requires a "case-by-case consideration." *Id.*, at 998. "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction

are appropriate." *Id.*, at 996, *citing Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1074 (2003). However, if "the court is unable to distinguish between the lawful and unlawful parts of the agreement, the illegality taints the entire contract and the entire transaction is illegal and unenforceable." *Birbrower, Montalbano, Condon & Frank v. Superior Court,* 17 Cal. 4th 119, 138 (1998). Courts should therefore sever objectionable provisions unless "***the central purpose of the contract*** is tainted with illegality." *Marathon*, 42 Cal. 4th at 996 (emphasis added).

California courts routinely excise objectionable provisions from contracts and enforce the remainder of the agreements. For example, the California Supreme Court found two provisions of a franchise agreement violated state antitrust laws but rejected "defendants' assertion that the entire franchise agreement must be declared void," finding that "partially illegal contracts may be upheld if the illegal portion is severable from the part which is legal." *Mailand v. Burckle*, 20 Cal. 3d 367, 384 (1978), *citing* to *Keene v. Harling*, 61 Cal. 2d 318, 320-321 (1964). Similarly, the California Court of Appeals also affirmed a trial court decision to strike two unconscionable provisions, a waiver of warranties and an exclusion of consequential damages, and enforce the remaining agreement. *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982).

"California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the

policy of the law would be furthered." *In re Marriage of Facter*, 212 Cal. App. 4th 967, 987 (2013), quoting *Adair v. Stockton Unified Sch. Dist.*, 162 Cal. App. 4th 1436, 1450 (2008). "The purpose of severing or restricting illegal terms rather than voiding the entire agreement is twofold: 'to prevent parties from gaining undeserved benefit or suffering undeserved detriment . . . , [and,] more generally, . . . to conserve a contractual relationship if to do so would not be condoning an illegal scheme.' " *Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1157 (2011), *quoting MKB Mgmt., Inc. v. Melikian*, 184 Cal. App. 4th 796, 803 (2010). The policy in favor of enforcing contracts is so strong in California, that California courts have re-written contract terms to ensure that the remainder of the contract could be enforced. *Carboni v. Arrospide*, 2 Cal. App. 4th 76 (1991) (affirming a lower court decision holding that a 200% short term interest rate was substantively unconscionable and modifying the rate to 24%).

Significantly, in the general contract context, California courts are highly deferential to severability clauses written into agreements. For example, a California Court of Appeal affirmed a trial court's decision to sever multiple provisions from a school district's contract with a private company to perform custodial and maintenance services which it found violated the California Education Code. *California Sch. Employees Ass'n. v. Del Norte County Unified Sch. Dist.*, 2 Cal. App. 4th 1396, 1401 (1992). The court concluded that "the

parties clearly intended [that the contract should] be severable" and "those aspects of the contract that provide for . . . regular supervision of employees, including . . . giving orders to such employees, setting work schedules, authorizing overtime, [and] approving timesheets," were improper and should be severed from the contract. *Id.* at 1401-1402. However, the court enforced the remaining agreement, instructing that "all services not specifically prohibited" could be enforced. *Id.* The court reached that determination, despite the fact that the issue of severability had not been briefed by the parties. *Id.*, at 1402. Accordingly, when reviewing contracts generally, California courts take a very liberal view towards severability and favor severing objectionable provisions and enforcing the remainder of the agreement between the parties.

### 2.   California's Severability Rule In Arbitration Agreements Differs From General Contract Law And Improperly Prevents Severability Of More Than One Unconscionable Provision.

Despite California's extensive case law concerning severability in contracts generally, California courts treat agreements to arbitrate differently than all other contracts and apply a separate, more stringent, rule of severability which serves to disfavor arbitration agreements. "[T]he California Supreme Court held [in *Armendariz*] that more than one unlawful provision in an arbitration agreement weighs against severance." *Fitz*, 118 Cal. App. 4th 702 (citing to *Armendariz* to support the court's refusal to sever two provisions from an arbitration agreement).

26

*Armendariz* held that where an arbitration agreement – but not any other contract – contains more than one unconscionable provision, the "defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an ***inferior forum*** that works to the employer's advantage." *Armendariz*, 24 Cal. 4th at 124 (emphasis added). Accordingly, despite California courts' treatment of severability under contracts generally (a liberal treatment favoring severance and enforcement of the contract), under *Armendariz*, California courts may conclude that an arbitration agreement is "permeated by an unlawful purpose" and refuse to enforce the entire agreement, if it has more than one purportedly unconscionable provision. *Id.*

In accordance with *Armendariz*, California courts repeatedly apply this rule and refuse to enforce arbitration agreements with more than one substantively unconscionable provision, "a circumstance considered by [the California] Supreme Court to 'permeate' the agreement with unconscionability." *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387 (2010); *see also Murphy v. Check 'N Go of Cal., Inc.*, 156 Cal. App. 4th 138, 149 (20007), *abrogation on other grounds recognized by Iskanian v. CLS Transp. Los Angeles, LLC*, 49 Cal. 4th 348, 366 (2014), ("An employment arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision' "). Indeed, California courts' refusal to excise more than one substantively unconscionable

provision from arbitration agreements has become perfunctory with little or no analysis to determine whether the offending provisions could be severed in a reasonable manner while leaving the remainder of the agreement intact. *See, e.g., Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 256 (2015) ("Severance was the correct solution . . . where only one clause in an arbitration agreement was found to be substantively unconscionable, but in light of our determination that multiple provisions of the . . . Arbitration Agreement are substantively unconscionable here, we conclude that severance of the offending provisions is not appropriate"); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 90 (2014) ("When an arbitration agreement contains multiple unconscionable provisions, '[s]uch…defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage' "); *see also Pinedo v. Premium Tobacco Stores*, 85 Cal. App. 4th 774, 782 ( 2000); *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 119 (2004); *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008), *abrogation on other grounds recognized in Malone v. Superior Court*, 226 Cal. App. 4th 1551 (2014); *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, (2010); *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1250 (2011).

Courts have applied the *Armendariz* rule against severing more than one

28

unconscionable provision even in cases, similar to the instant case, in which the parties expressly agreed to sever any illegal terms and enforce the remainder of the agreement. For example, in *Parada v. Superior Court*, the arbitration agreement at issue included a severability clause: "[i]n the event that any provision of this Agreement shall be determined by a trier of fact of competent jurisdiction to be unenforceable . . . the remainder of this Agreement shall remain binding upon the parties as if such provision was not contained herein." 176 Cal. App. 4th 1554, 1566 (2009). In that case, despite the express agreement of the parties to sever unenforceable provisions and enforce the remainder of the arbitration agreement, the court, citing to and relying on *Armendariz*, refused to sever because there were multiple offending provisions. *Id.*, at 1586.

### 3. California's Severability Rule For Arbitration Agreements Is Preempted By The FAA.

#### a. *Armendariz* Demonstrates California Courts' Animus Towards Arbitration As An Alternate Forum.

The very language of *Armendariz*, relied upon and often cited by cases applying the discriminatory arbitration severability rule, including the District Court in this action, highlights the California courts' hostility towards arbitration. "[M]ultiple defects [in an arbitration agreement] indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an ***inferior forum*** that works to the employer's advantage." *Armendariz*, 24 Cal.

4th at 124 (emphasis added). Yet, at the same time, California courts routinely allow severability of more than two objectionable provisions in non-arbitration contracts and enforce the remainder of the agreements. California courts, applying *Armendariz*, simply treat agreements to arbitrate differently than other contracts.

Indeed, the language used in *Armendariz* demonstrates that it is rooted in discrimination towards arbitration and a belief that arbitration is a less desirable forum to the court system. *Armendariz* outlined the potential "disadvantages that may exist for plaintiffs in arbitrating disputes" and "inherent shortcomings of arbitration." *Id.*, at 116-118. It further observed that arbitration could "become an instrument of injustice." *Id.*, at 115. The court noted several studies and opined that arbitration "reduces the size of the award that an employee is likely to get." *Id.* It further stated that "courts and juries are viewed as more likely to adhere to the law and less likely than arbitrators to 'split the difference' between the two sides, thereby lowering damages awards for plaintiffs." *Id.*, at 119. Boldly, the court noted that "arbitration agreements that encompass unwaivable statutory rights must be subject to ***particular scrutiny***." *Id.*, at 100, emphasis added.

Clearly such language does not comport with the Supreme Court's admonition in *Concepcion* that state common law or procedures may not discriminate against arbitration agreements. *Concepcion*, 563 U.S. at 343.

### b. The FAA Preempts Application Of The *Armendariz* Severability Rule.

As fully outlined, above, *Armendariz* and its progeny universally apply an arbitrary severability rule, adopted by the District Court in this case, which prevents courts from severing more than one substantively unconscionable provision from arbitration agreements. California courts do not, however, apply any similar rule to contracts generally. In other words, when determining whether to enforce contracts, other than agreements to arbitrate, there is no rule by which courts find that more than one unconscionable provision demonstrates that the contract is "permeated with unconscionability" such that the court must refuse to enforce the entire contract. Such hostility is **solely** applied to agreements to arbitrate and to no other agreements in California.

Because the *Armendariz* severability rule, adopted by the District Court in this case, treats arbitration agreements "in a manner different from that in which it otherwise [treats] nonarbitration agreements under state law," it is preempted by the FAA. *Perry*, 482 U.S. at 492 n.9. The *Armendariz* rule "singl[es] out arbitration provisions for suspect status." *Doctor's Associates*, 517 U.S. at 687. Further, the rule "takes its meaning precisely from the fact that a contract to arbitrate is at issue," by finding that multiple unconscionable provisions in an arbitration agreement, but not any other contract, demonstrate that the contract has an unlawful purpose and "rel[ies] on the uniqueness of an agreement to arbitrate as

31

a basis for a state-law holding that enforcement would be unconscionable."
*Concepcion*, 563 U.S. at 341, *quoting Perry*, 482 U.S. at 493 n.9. As this Court
recently found, "*Concepcion* and its progeny should create a presumption in favor
of severance when an arbitration agreement contains a relatively small number of
unconscionable provisions that can be meaningfully severed[.]" *Merkin v. Vonage
America, Inc.*, 2016 WL 775620, at *2 (9th Cir. 2016), citing to *Zaborowski v.
MHN Gov's. Servs., Inc.*, 601 F. App'x 461, 464-65 (9th Cir. 2014) (Gould, J.,
concurring in part and dissenting in part).

Under the clear Supreme Court precedent in *Perry*, *Doctor's Associates* and
*Concepcion*, the *Armendariz* rule instructing courts to refrain from excising more
than one objectionable provision from an arbitration agreement, adopted here by
the District Court, is improper and preempted by the FAA.

### 4. The District Court Abused Its Discretion By Refusing To Sever The Three Purportedly Unconscionable Provisions Of The Arbitration Agreement.

Here, the District Court relied on *Armendariz* and its progeny in refusing to
sever the three offending provisions of the Arbitration Agreement on the grounds
that "the unconscionable provisions included in the Arbitration Agreement are
simply too numerous and too important to be severed from the whole."[3] ER 23,

---

[3] Notably, several months after the District Court issued its order, a different judge
in the Northern District severed three provisions found to be unconscionable from
an arbitration agreement. *Galen, et al. v. Redfin Corp.*, 2015 WL 7734137, at *9

citing to *Armendariz*.  In any other contract context, three provisions would not be considered "numerous."  The District Court's perfunctory adoption of the *Armendariz* rule of severability, treats arbitration agreements differently than other contracts under California law and, accordingly, is preempted by the FAA. *Concepcion*, 563 U.S. at 339, 341.

Federal policy articulated in the FAA serves "to ensure that 'private agreements to arbitrate are enforced according to their terms.' " *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 664 (2010), quoting *Volt* , 489 U.S. at 489.  Here, the Arbitration Agreement at issue included an express severability clause.  ER 112.  Despite Finish Line's repeated offer to waive the objectionable provisions, and its request that the District Court strike the objectionable provisions in accordance with the parties' express agreement to sever illegal provisions, the court ignored the severability clause and refused to sever the offensive provisions from the Arbitration Agreement.  ER 5-9, 23-25, 48-49, 167, 170-171.  In refusing to sever the objectionable provisions and enforce the remainder of the agreement, the District Court improperly treated the Arbitration Agreement differently from other contracts.  *Concepcion*, 563 U.S. at 339, 341.

Indeed, the District Court did not even conduct an examination to determine

---

(N.D. Cal. Dec. 1, 2015). In that case, the court re-interpreted a separate ambiguous and possibly objectionable provision and severed three provisions including, a fee-shifting provision, a forum selection clause and choice of law clause.  *Id.*, at *11.

whether severance was feasible. ER 15-25. Rather, the court perfunctorily applied the *Armendariz* rule to conclude that because it found more than one offensive provision in the Arbitration Agreement, the three provisions could not be excised from the agreement. ER 23-25 ("the unconscionable provisions included in the Arbitration Agreement are simply too numerous and too important to be severed from the whole").

The fact that the District Court could conclude that three provisions were "numerous" demonstrates the prejudice and fallacy inherent in the *Armendariz* rule. Indeed, excising the three objectionable provisions from the Arbitration Agreement would be a simple exercise that would not require the court to re-write the contract, much less a "reformation" as asserted by the court. ER 24. The District Court did not attempt such an exercise, much less conduct a meaningful analysis to determine whether it would be possible. Rather, it simply relied on the *Armendariz* rule and refused to sever the three offending provisions. ER 23-25.

The simple exercise of severing the three provisions from the Arbitration Agreement would have preserved the parties' original intent to arbitrate their disputes and the parties' agreement to sever any provisions found to be illegal. Had the District Court simply severed the three offending provisions (two of which Finish Line repeatedly offered to sever and the third which this Court recently found is not unconscionable) the central purpose of the contract, to arbitrate

34

employment disputes between Capili and Finish line, would remain. *Marathon*, 42 Cal. 4th at 996. Despite the District Court's conclusion, none of these provisions are essential to the underlying agreement to arbitrate and no harm would have come from severing the provisions and enforcing the remainder of the agreement. The District Court abused its discretion by applying the *Armendariz* rule and refusing to honor the parties' intent to sever any objectionable provisions and enforce the remainder of the Arbitration Agreement.

## C.    The Arbitration Agreement Is Not Unconscionable And Should Be Enforced.

For a contract to be found unconscionable, it must be "both procedural[ly] and substantive[ly] unconscionable at the time the contract was made." *American Software, Inc., v. Ali*, 46 Cal. App. 4th 1386, 1390 (1996). The California Supreme Court's recent holding in *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (2015) outlines the test for unconscionability, stating that it:

> Refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce the contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of

35

> the substantive terms themselves. In other words, the more
> substantively oppressive the contract term, the less evidence of
> procedural unconscionability is required to come to the conclusion
> that the term is unenforceable, and vice versa.

*Id.*, at 910 (internal citations and quotation marks omitted). Based on principles of

contract law, the Arbitration Agreement at issue is not unconscionable.

### 1. <u>The Arbitration Agreement Is Not Procedurally Unconscionable.</u>

The District Court erred in its finding that the Arbitration Agreement is

procedurally unconscionable. Procedural unconscionability requires more than

"inequity of bargaining power." *Wayne*, 135 Cal. App. 4th at 480. The party

seeking to avoid a contract it must be "oppress[ed]" or "unfairly surprised."

*Shadoan v. World Sav. & Loan Ass'n.*, 219 Cal. App. 3d 97, 102 (1990).

Here, the court's sole basis for finding procedural unconscionability

centered on the fact that the court concluded it was a contract of adhesion. ER 18-

19. However, whether a contract is a contract of adhesion no longer weighs

strongly in favor of finding procedural unconscionability. The mere fact that an

agreement is a contract of adhesion, without more, does not render the agreement

procedurally unconscionable. *Concepcion*, 563 U.S. 346-347; *Bradley v. Harris*

*Research, Inc.*, 275 F.3d 884, 892 (9th Cir. 2001) ("bald assertion of inequality in

bargaining power" is insufficient); *Fouts v. Milgard Mfg., Inc.*, No. C11-06269

HRL, 2012 WL 1438817, at *6 (N.D. Cal. Apr. 25, 2012) (finding employer's

contract of adhesion was not procedurally unconscionable because the terms were

not hidden); *Carlile v. Russ Berrie & Co.*, No. SACV 08-0887 AG (RNBx), 2008 WL 4534281, at *3 (C.D. Cal. Oct. 6, 2008) (finding no procedural unconscionability where the arbitration agreement was a condition of employment and where the arbitration clause was not buried within the agreement); *see also Beard v. Santander Consumer USA, Inc.*, No. 1:11-cv-11-1815 LJO-BAM, 2012 WL 1292576, at *12 (E.D. Cal. Apr. 13, 2012). Accordingly, the district court erred in its holding as to the procedural unconscionability of the Arbitration Agreement.

Further, Capili did not assert any "oppression" or "surprise" as to the arbitration agreement, nor could she. In her two separate applications to Finish Line, the company presented Capili with three separate arbitration agreements related to her employment with the company, two contained within her applications and the third as a separate, stand alone, agreement. ER 90, 92, 95-103, 75-78. As a result, she was obviously well aware that she was agreeing to arbitrate any employment disputes. There is no evidence, or allegation, that the Arbitration Agreement was anything other than clear and straightforward. ER 60-68. Nor is there any evidence that Capili was rushed to review the agreement. *Id.*

To the contrary, as noted by the District Court, "the fact that Finish Line's automated process specifically called out the Arbitration agreement reduces the level of unfairness, *see Molina v. Scandinavian Designs, Inc.*, No. 13-cv-04256

NC, 2014 WL 1615177, at *7 (N.D. Cal. Apr. 21, 2014) (holding the amount of procedural unconscionability was limited by the fact that the arbitration agreement was presented as a separate two page document)." ER 19. Despite this finding, the District Court nevertheless found "that the circumstances of the parties' agreement demonstrates at least some level of procedural unconscionability." *Id.*

Even if the adhesive nature of the agreement, alone, could make the agreement procedurally unconscionable, which it cannot, that fact alone constitutes a very low degree of procedural unconscionability and would require an extremely high degree of substantive unconscionability to find that the entire agreement is unconscionable. *Saincome v. Truly Nolen of Am., Inc.*, No. 11-CV-825-JM (BGS), 2011 WL 3420604, at *10 (S.D. Cal. Aug. 3, 2011) (although the arbitration agreement was a contract of adhesion, "because Defendant does not appear to have engaged in any actively oppressive tactics in order to convince or coerce Plaintiff into signing it, the Agreement is only minimally procedurally unconscionable"); *Dotson ,*181 Cal. App. 4th at 981-82 (concluding that where the agreement did not have any other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement would be enforceable unless the degree of substantive unconscionability is high).

Here, the degree of procedural unconscionability, even in the District Court's view, was relatively low. Accordingly, the District Court needed to find a

"high" level of substantive unconscionability to invalidate the contract entire. As

outlined, below, that "high" level of substantive unconscionability did not exist

here and the District Court erred in its refusal to enforce the parties' agreement or

sever the provisions the court found substantively unconscionable.

## 2. The Arbitration Agreement Is Not Substantively Unconscionable.

A determination that a contract term is "substantively unconscionable"

requires that agreements are more than merely "unreasonable." *American*

*Software, Inc.*, 46 Cal. App. 4th at 1391. "Basing an unconscionability

determination on the reasonableness of a contract provision would inject an

inappropriate level of judicial subjectivity into the analysis." *Morris,* 128 Cal.

App. 4th at 1322. Finding that a provision is substantively unconscionable is a

high bar. For a contract term to be substantively unconscionable, it must be "so

one-sided as to 'shock the conscience.' " *Id.*

Here, the District Court found three provisions of the Arbitration Agreement

substantively unconscionable: (1) the forum selection clause; (2) the agreement's

exemption of certain claims[4]; and (3) the cost sharing provision. ER 15-25. The

District Court reached its decision that the three provisions are substantively

unconscionable by applying *Armendariz* and its progeny. *Id.* In doing so, the

---

[4] With respect to the second provision, the District Court's finding that the exemption of certain claims is unconscionable was clearly erroneous in light of recent Ninth Circuit authority. *Merkin*, 2016 WL 775620, at *1.

court improperly applied judicially created California law that disfavors arbitration and which, under *Concepcion*, is preempted by the FAA. "Although §2's saving clause preserves generally applicable contract defenses, it does not suggest an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 334. "The FAA's overarching purpose is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate informal, streamline proceedings." *Id.*

### a.  The Exemption Of Certain Claims From Arbitration Is Not Unconscionable.

The District Court found the Arbitration Agreement provision which exempts certain claims from arbitration substantively unconscionable because, the court found, it demonstrates a lack of mutuality. ER 21-22. The provision at issue states:

> Notwithstanding anything to the contrary in this Plan, the Plan does not apply to (i) Employees' claims for workers' compensation benefits or unemployment compensation benefits or (ii) claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. Further, nothing herein is intended or will operate to affect the exclusive remedies under the applicable workers' compensation statute.

ER 110. Quoting from *Armendariz*, and relying on two post-*Armendariz* California Court of Appeal cases, *Martinez v. Master Protection Corp*, 118 Cal. App. 4th 107, 115 (2004) and *Mercuro v. Superior Court*, 96 Cal. App. 4th 167,

176 (2002), the District Court found this provision substantively unconscionable.

ER 21-22. The District Court reached that conclusion finding that this provision

"requir[es] arbitration only for the claims of the weaker party but [provides] a

choice of forums for the claims of the stronger party." ER 21. In reaching that

determination the District Court applied California State rules applicable solely to

arbitration agreements, rather than contracts generally. Under *Concepcion*, such a

rule improperly disfavors arbitration and is preempted by the FAA. *Concepcion*,

563 U.S. at 339; Section VIII(A)(2), *supra*.

While this Court previously upheld decisions finding similar provisions

substantively unconscionable, citing to *Mercuro*, each of those decisions pre-dates

*Concepcion. Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d

996, 1004-1005 (9th Cir. 2010); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257,

1285-1286 (9th Cir. 2006); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d

778, 784-785 (9th Cir. 2002). However, because those cases pre-date *Concepcion*,

the cases are inapplicable to the instant action. In *Concepcion*, the Supreme Court

reaffirmed that under the FAA "[p]arties may agree to limit the issues subject to

arbitration." *Concepcion*, 563 U.S. at 334, citing to *Mitsubishi Motors Corp. v.*

*Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

In a recent case this Court ruled on the very issue raised here: whether an

arbitration provision "which exempts certain categories of claims from arbitration"

which are more likely to be brought by the party with greater bargaining power are substantively unconscionable. *Merkin*, 2016 WL 775620, at *1. In that case, the appellant-defendant, Vonage, appealed an Order of the Central District of California denying its motion to compel arbitration. *Id.* In particular, Vonage challenged the District Court's finding that a clause which carved-out certain provisions from the arbitration agreement at issue was unconscionable. *Id.* That provision carved out five separate categories of actions, including small claims brought by the customer, debt collection actions, disputes concerning intellectual property rights, disputes concerning "fraudulent or unauthorized use, theft or piracy of service," and interim preliminary relief to protect property rights. *Merkin v. Vonage America, Inc.*, 2014 WL 457942, at *10 (C.D. Cal. Feb. 3, 2014). The District Court found that, in particular, the debt collection, intellectual property and unauthorized use disputes were claims that Vonage would most likely bring against its customers, whereas arbitration would be required for the majority of the claims that Vonage's customers would likely bring against the company. *Id.* Citing to *Armendariz*, *Mercuro*, and their progeny, the District Court found that because of the inclusion of the "carve-out" provision, the arbitration agreement lacked "the requisite 'modicum of bilaterality' " and was therefore unconscionable. *Id.*, at *11, quoting *Armendariz*, 24 Cal. 4th at 117.

In analyzing the carve-out provision on appeal, this Court relied on

*Concepcion* to reject the Central District's finding that the carve-out provision was unconscionable. *Merkin*, 2016 WL 775620, at *1. This Court recognized that the "Federal Arbitration Act preempts state-law defenses 'that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is in issue.' " *Id*., citing to *Concepcion*. Ultimately, this Court concluded that "[t]he California rule relied upon by Plaintiffs [and the District Court] is such a defense." *Id.*

Here, similar to the District Court in *Merkin*, the District Court erred when it relied upon California case law that discriminates against arbitration agreements and found that the Arbitration Agreement clause exempting certain claims was substantively unconscionable. The District Court further erred when it refused to enforce the parties' agreement to limit the issues subject to arbitration and, instead, relied upon case law preempted by the FAA and the Supreme Court's decision in *Concepcion* to justify its refusal to sever this provision from the agreement and enforce the remainder of the agreement. *See* Sections A-B, *supra*.

**b.    The Cost Sharing Provision Is Not Unconscionable.**

Under general California contract law, "[i]n determining whether a price term is unconscionable, courts … consider the value being conferred upon the plaintiff." *Morris*, 128 Cal. App. 4th at 1323 (2005). In evaluating such a price term, courts must consider whether the term is "so harsh or oppressive as to 'shock the conscience' " at the time the contract was signed. *Id.*, at 1324; Cal. Civ. Code

§ 1670.5(a).  Here, the cost sharing provision does not rise to that level.

The cost sharing provision of the Arbitration Agreement provides, in part:

The parties shall equally share the cost of any filing fee and the fees and costs of the Arbitrator; provided, however, that the Employee's maximum contribution shall be the greater of (i) $10,000.00 or (ii) 10% of the amount in controversy.  The Arbitrator has the authority upon motion to further reduce the Employee's share of the costs and fees upon a showing of substantial need.

ER 112.

In this action, Capili did not provide any evidence of the likely costs that would be incurred.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("*Green Tree*").  Under the terms of the agreement, the costs would be divided and the employee's share of the costs would be capped, with the possibility that the arbitrator could reduce the employee's share of the costs.  ER 112.  Rather than calculate the possible fees in this case, Capili just assumed that she would be required to pay up to the cap and that under *Armendariz*, that requirement was unconscionable.  ER 66-67.  However, under *Green Tree*, Capili had a burden to prove the actual costs she would likely incur in arbitration.  531 U.S. at 90-91, n.6 (finding that the "risk" of being "saddled with prohibitive costs is too speculative to justify invalidation of an arbitration agreement" after the plaintiff failed to provide evidence to "ascertain the actual costs and fees to which she would be subject in arbitration"); *see also Jackson v. Rent-A-Center West, Inc.*, 581 F.3d 912, 919 (9th Cir. 2009) (plaintiff "presented no evidence suggesting prohibitive

44

costs would *actually* be incurred and so did not meet his burden"), *rev'd on other grounds* by 561 U.S. 63 (2010).

Significantly, the cost sharing provision at issue here was upheld by the Seventh Circuit, citing to *Green Tree*. *Baumann v. Finish Line, Inc.*, 421 Fed. App'x. 632, 634-35 (7th Cir. 2011). In that case, the court concluded that the employee failed to establish what costs would actually be incurred in arbitration, demonstrating that clear language relating to the cap on costs does not establish a presumptive minimum cost to the employee. *Id.* Although the District Court assumed that the fee provision was unconscionable on its face, the applicable AAA rules and fee schedule establish that the only costs Capili would incur in arbitration would be a filing fee similar to state court. *See* AAA Employment Arbitration Rules and Mediation Procedures, Costs of Arbitration. ER 124-125.

In this case, the District Court's presumption that the cost sharing provision is *per se* unconscionable under *Armendariz* improperly disfavors arbitration under the FAA. California law requires that courts interpret contracts in a manner that renders them lawful. *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665, 682 (2010); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998). Indeed, California public policy, prior to *Armendariz*, provided that "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or

approved by the neutral arbitrator."  Cal. Code Civ. Proc. § 1284.2; *24 Hour Fitness, Inc.*, 66 Cal. App. 4th at 1215 (upholding an arbitration provision in which "fees and expenses [were to be] split in half"); *Turner v. Superior Court*, 67 Cal. App. 4th 1432, 1435, 1438-39 (1998) (upholding a cost sharing provision in which the plaintiff, a brain damaged child, failed to make a minimum showing of hardship or produce evidence of likely charges).

This Court's decisions considering the unconscionability of arbitration cost sharing provisions universally rely on *Armendariz's* holding that "the arbitration process cannot generally require the employee to bear any type of expenses that the employee would not be required to bear if he or she were free to bring the action in court."  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010); *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1177 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002).  The provision in the Finish Line Arbitration Agreement is not inconsistent with *Armendariz* because the arbitrator would have the authority to reduce or eliminate her share of the fees.  Even were that not the case, after applying AAA's rules, Capili would only be required to pay the minimal filing fee for AAA, similar to that which she would be required to pay if she filed a civil action in state court.

However, the *Armendariz* holding is preempted by the FAA because it

creates rules that are applicable only to arbitration agreements and because it establishes a system in which arbitration is a disfavored forum. *Concepcion*, 563 U.S. at 341. Based on that preemption, there is no basis on which to find that the cost sharing provision is substantively unconscionable.

Indeed, the California Arbitration Act, rather than the court-created doctrine found in *Armendariz*, embodies the California's legislature's policy concerning cost sharing provisions in arbitration agreements. *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 76 (1998) (finding that " 'public policy' as a concept is notoriously resistant to precise definition, and that courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch in order to avoid judicial policymaking"). The cost sharing provision at issue here is entirely consistent with the California Code of Civil Procedure § 1284.2. Based on that clear public policy, the provision at issue is not unconscionable.

Moreover, Finish Line repeatedly offered to waive this very provision, in its discussions with Capili prior to bringing its motion to compel. ER 54, 79, 167, 170-171. In doing so, Finish Line agreed to pay for the entire cost of the arbitration. *Id*. Despite that agreement, Capili refused to stipulate to arbitrate the action. ER 79, 167, 178. Later, when Capili opposed Finish Line's Motion to Compel, Finish Line requested that the court strike the cost sharing provision as moot, since Finish Line previously agreed to waive the provision, consistent with

the parties' severability clause.  ER 5-9, 48-49, 53-54.  The court refused.  ER 23-25.  Had the court acted in a manner to encourage and promote arbitration, as required by the FAA, it would have stricken this provision and enforced the agreement to arbitrate.  The District Court's refusal to strike the provision and enforce the remainder of the agreement is contrary to the parties' express agreement, the FAA and the Supreme Court's clear instruction.  *See* Section VIII(A)-(B), *supra.*

### c.   The Forum Selection Clause Is Not Unconscionable.

The Arbitration Agreement provides that the "Arbitration shall take place in Indianapolis, Indiana"  and that "[a]ny challenge to the enforceability of this Plan or the arbitrator's award shall be filed in federal court in the Southern District of Indiana, Indianapolis Division, or in a state court situated in Marion County, Indiana."  ER 109, 111.  The District Court agreed with Capili that the venue provision is unconscionable, finding that "[f]orcing a retail shoe store employee to initiate an arbitration and/or challenge an arbitration agreement thousands of miles away from her place of work erects a substantial barrier to the vindication of the statutory discrimination claims at issue in the case."  ER 21, *citing to Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909 (2001).

However, "mere inconvenience or additional expense is not the test of unreasonableness."  *Lu v. Dryclean-U.S.A. of Cal., Inc.*, 11 Cal. App. 4th 1490,

1493 (1992); *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal. 3d 491, 496 (1976). Rather, as this court has noted, "[f]orum selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable." *Nagrampa*, 469 F.3d at 1288, *quoting America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 12 (2001). Forum selection clauses in arbitration agreements should be afforded this same presumption. *Captain Bounce, Inc. v. Business Fin. Servs.*, No. 11-CV-858 JLS (WMC), 2012 WL 928412, at *9 (S.D. Cal. March 19, 2012) (finding that the plaintiff did not make a "strong showing" that the selected arbitration forum, North Carolina, was unconscionable in a commercial litigation matter); *Hadlock v. Norwegian Cruise Line, Ltd.*, No. SACV 10-0187 AG (ANx), 2010 WL 1641275, at * 5-6 (C.D. Cal. April 19, 2010) (upholding an arbitration agreement forum selection clause designating Miami as the forum).

  As with other issues, California courts improperly discriminate against employment and commercial arbitration agreements by applying a separate standard for such agreements, which improperly disfavors arbitration. *Concepcion*, 563 U.S. at 334. Here, the forum selection clause does not rise to the level that it would "shock the conscience," and accordingly does not rise to the high bar of substantive unconscionability. Moreover, if Finish Line were to seek enforcement of this clause, Capili would only be required to appear in Indiana for the arbitration hearing, not for any other matter.

Moreover, as with the cost sharing provision, in its first communication with Capili, Finish Line agreed to waive the forum selection clause and arbitrate the matter in San Francisco, California with local arbitrators selected by the parties. ER 79, 167, 170-171. When Capili rejected that offer, Finish Line brought its motion to compel in San Francisco, thereby waiving its right to have any "challenge to the enforceability" of the Arbitration Agreement heard in "Marion County, Indiana," as allowed under the agreement. ER 69-88. Further, Finish Line repeatedly invited the District Court to simply strike this provision and enforce the remainder of the agreement pursuant to the parties' express severability clause. ER 5-9, 48-49. Demonstrating the hostility towards arbitration agreements embodied in *Armendariz* and its progeny, the district court refused. ER 15-25. That refusal is inconsistent with the FAA and *Concepcion*. *See* Section VIII(A)-(B), *supra*.

## IX.  **CONCLUSION.**

For the reasons outlined above, Finish Line requests that this Court reverse the District Court's opinion, and remand this matter with instructions to compel arbitration of Plaintiff's claims or, in the alternative, to sever the offending provisions of the Arbitration Agreement and compel arbitration under the remainder of the agreement.

DATED:  March 28, 2016       Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Thomas M. McInerney*
    Thomas M. McInerney
    Brooke S. Purcell
Attorneys for Defendant - Appellant
THE FINISH LINE, INC.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case involves complex legal issues, including the impact of the U.S.

Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740

(2011). Oral argument will help the Court fully analyze these issues.

DATED: March 28, 2016      OGLETREE, DEAKINS, NASH, SMOAK
                           & STEWART, P.C.

                           By: */s/ Thomas M. McInerney*
                               Thomas M. McInerney
                               Brooke S. Purcell
                         Attorneys for Defendant - Appellant
                         THE FINISH LINE, INC.

## **CERTIFICATE OF COMPLIANCE**

The foregoing Opening Brief of Defendant-Appellant Finish Line complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). The brief is proportionately spaced, has a typeface of 14 points or more, and contains 11,372 words and 1,036 lines of text.

DATED: March 28, 2016      OGLETREE, DEAKINS, NASH, SMOAK
         & STEWART, P.C.


      By: */s/ Thomas M. McInerney*
        Thomas M. McInerney
        Brooke S. Purcell
      Attorneys for Defendant - Appellant
      THE FINISH LINE, INC.

## <u>CERTIFICATE OF RELATED CASES</u>

In accordance with 9th Cir. R. 28-2.6, Finish Line affirms that there are no related cases pending in this Court. A prior case involving Finish Line and other plaintiffs was appealed to this court, see *Antonelli, et al. v. The Finish Line Inc.*, Case 12-15512. Similar issues were raised in that prior case.

DATED: March 28, 2016        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

                            By: */s/ Thomas M. McInerney*
                                 Thomas M. McInerney
                                 Brooke S. Purcell
                          Attorneys for Defendant - Appellant
                          THE FINISH LINE, INC.

## <u>CERTIFICATE OF SERVICE</u>

The foregoing Opening Brief for Defendant-Appellant was electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 28, 2016. All participants in the case are registered CM/ECF users. Service will be accomplished by the appellate CM/ECF system.

DATED: March 28, 2016         OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Thomas M. McInerney*

Thomas M. McInerney
Brooke S. Purcell
Attorneys for Defendant - Appellant
THE FINISH LINE, INC.

24312867.1

55